UNITED STATES *v.* MILTON DIAMOND AND MASSCE-BARNETT CO., INC. (No. 4770) [1]

---

[1] C. A. D. 561

10

United States Court of Customs and Patent Appeals, April 9, 1954

*Warren E. Burger*, Assistant Attorney General (*Daniel I. Auster, Joseph E. Weil, and Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument February 4, 1954, by Mr. Auster and Mr. Schwartz]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JACKSON, Judge, delivered the opinion of the court:

Appellee imported a 16 millimeter sound motion-picture projector into the port of New York. The projector comprised two units, each enclosed in a metal case provided with handles designed to be used in the carrying thereof. In one of the cases was contained mechanism for the projection of the picture and the transmission or rectifying the sound into electrical energy for amplification. The other case contained the loud-speaker with a transformer and a cord of wire designed to plug into a socket in the case which contained the projector.

The importation was classified by the collector pursuant to paragraph 228 (b) of the Tariff Act of 1930, which reads as follows:

\* \* \* projection lenses \* \* \* all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

The portion of the foregoing quoted part of the act covering projection lenses and frames and mountings therefor, which carry a dutiable rate of 45 per cent ad valorem, had been invoked by the collector.

Appellee protested the classification and claimed the imported merchandise to be properly dutiable under paragraph 353 of the act as modified by the Trade Agreement with the United Kingdom, T. D. 49753, reading as follows:

| *Tariff Act of 1930 paragraph* | *Description of article* | *Rate of duty* |
|---|---|---|
| 353 | Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, electrical generators, transformers, converters, double current and motor generators, dynamotors, and all other articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, locomotives, portable tools, furnaces, heaters, ovens, refrigerators, and signs (except telephone, wiring, diagnostic, and therapeutic apparatus, instruments, and devices, primary cells, flashlights, switches, switch gear, fans, blowers, washing machines, and machines not herein provided for by name which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device, and except articles of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any agreement heretofore concluded under section 350 of such act, as amended); all the foregoing not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule. | 25% ad val. |

An alternative claim was also made by appellee under the general provision for "all other machines, finished or unfinished, not specially provided for" of paragraph 372 of the act carrying the assessment of duty in the rate of 27½ per cent ad valorem. One witness, son of the importer, testified in the case and three exhibits, which are photographs used to illustrate the testimony of the witness, are in evidence. The Government produced no testimony.

The United States Customs Court, First Division, gave judgment sustaining the protest with respect to the claim of the proper rate of duty being 25 per cent ad valorem under the modified paragraph 353 of the act pursuant to its decision, Abstract 56994. From the judgment this appeal was taken.

The mechanism and operation of the machine were meticulously described by the witness. His testimony was well summed up by the trial court in its decision and adopted by the Government in its brief. Therefore, we will quote from the decision of the trial court as follows:

The sound motion-picture projector under consideration uses a film that not only carries the picture sequence, but also has a sound track as an integral part thereof. The motive power for the mechanism is an electric motor which causes the film to travel through the projector in this way. The reel of film is mounted on an arm and, in unwinding, it passes over so-called idlers and then is threaded

around a sprocket, traveling in a loop through a gate. In the gate, there is an aperture at which the film remains momentarily still while a shutter opens, and the light from an incandescent lamp passes through the film and through the projector lens, causing the picture to appear on the screen. As the film comes out through the bottom of the gate, it is threaded in another loop and carried through a sprocket and two additional idlers to the take-up reel.

The sound track is an integral part of the film. Light from an incandescent lamp passes through the sound track to a photoelectric cell that transforms variations in light density, caused by irregularities in density on the sound track, into fluctuations in an electric current. A control panel regulates the volume and tone of the sound.

The loud-speaker is electrically connected with the projector by a five-point connector to accommodate the five wires wrapped in an insulating cable connecting the loud-speaker and the projector. The electrical connection energizes an electromagnet in the loud-speaker, thereby exciting the voice coil and causing the diaphragm to vibrate, thus producing sound. Speed of the sound projection is regulated by a large gear upon which is mounted a flywheel and a pulley. Three electronic tubes rectify and amplify the sound.

The transformer is essential to change the electric current for proper sound application. The projector is designed to operate only on alternting current. Direct current is necessary to excite the voice coil and the transformer accomplishes the necessary adjustment. A series of jacks makes the projector adaptable to any area, irrespective of the type of voltage available.

It also appears from the testimony that the apparatus cannot operate unless it is all connected together as shown by the following answers to the questions by Government counsel.

XQ. What I mean is, on exhibit 1 here you have the whole box. Now the part to which the lens fits into, that is the rest of this, is that the entire projector? A. You mean what is shown in plaintiff's exhibit 1, which happens to include the lens, does that in my opinion constitute the entire projector?

XQ. Yes. A. No; it doesn't, because it can't operate at all unless the loud speaker unit, shown in plaintiff's exhibit 3, is also connected to it and operating.

XQ. In other words, you can't operate that projector without the loud speaker unit? A. That is correct.

XQ. Can't you run still films on it, or silent films on it? A. They would have to be silent films taken especially for the purpose, because the standard speed at which silent films are taken in [sic] 16 frames per second, and the standard speed of sound film is 24 frames per second, and this device has no speed adjustment on it. It is made with a synchronous motor that operates at 24 frames per second, so if you attempt to show a silent film on it, unless especially taken for that purpose, the actors in the film would appear to be moving at 50 percent greater than normal speed.

XQ. Isn't the sound part plugged into the rest of the set? A. Yes.

XQ. Could you operate the rest of it without the sound part? A. No.

It does not appear to be contested by counsel for the Government that the imported machine is not included in the language in the third subdivision of paragraph 353 as an article having as an essential feature an electrical element or device. Therefore, unless the merchandise is more specifically provided for in some other paragraph of the act, its dutiable status must be pursuant to that paragraph.

Counsel for appellee contended in their brief below and likewise contend here that the involved merchandise is more than projection lenses, frames and mountings therefor, set out in paragraph 228 (b), *supra,* and in support of that contention counsel cited below and cites here the case of *United States* v. *Paramount Publix Corp.,* 22 C. C. P. A. (Customs) 452, T. D. 47453, which case is stated in the decision below to be analogous. The merchandise in that case was motion-picture reproducing machine being a complete projection apparatus with the picture-taking or camera means, a motor reel holder, and other associated parts. The machine was employed in the transferring or copying of a finished or developed film to another unexposed film. It was classified under the provision of 228 (b) of the present Tariff Act as being "photographic or projection lenses * * * frames and mountings therefor, and parts of any of the foregoing. *. *. *" This court did not agree with the assessment made by the collector or the contention of the Government that the imported machine was provided for in said paragraph and stated in its decision that, in that particular, consideration was required not only of the cases of *United States* v. *Massce,* 20 C. C. P. A. (Customs) 210, T. D. 45993; *American Holding et al.* v. *United States,* 18 C. C. P. A. (Customs) 275, T. D. 44449; and *United States* v. *Clay Adams, Inc.,* 20 C. C. P. A. (Customs) 285, T. D. 46078, but also of the court's decision in *United States* v. *American Express,* 7 Ct. Cust. Appls. 169, T. D. 36490.

In its holding that the merchandise in the *Publix* case, *supra,* was excluded from paragraph in which it was classified, the court stated:

* * * If Congress had meant for a complete moving-picture projecting apparatus, including a motor, reels, and all its parts to be dutiable under paragraph 228 (b), it would have been an easy matter to have placed in the paragraph language comparable to that used by the collector in characterizing the involved merchandise as 'projection apparatuses and parts thereof.' (Note the special provision in paragraph 1551, *supra.*) Having failed to do so, we are not inclined to indulge in a more liberal construction of the provision under consideration, in the direction contended for by the Government, than is indicated in such decisions. We, therefore, for the reasons above stated, hold that the complete projecting apparatus, when combined with the complete photographic camera, together with the associated parts, constitutes a machine not provided for under said paragraph 228 (b), *supra.*

The trial court herein was of opinion that the case of *United States* v. *Clay Adams Co., Inc., supra,* also has a direct bearing upon the present issue. In the *Clay Adams* case, the merchandise was a combination microscope and projection apparatus. It was classified under paragraph 228 (b) pursuant to its following portion: "* * * photographic or projection lenses, * * * microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem."

The importation in that case was styled by its sellers as a "Microscopic drawing and projection apparatus." It possessed the principle of the microscope in the magnification of a specimen and a projecting means which, through the use of a lens and light, would project a magnified image of the specimen downwardly on a sheet of paper where the reflected image was shown by a picture or reflection about seven inches in diameter, or upon a screen on the wall where the image would be three or four feet in diameter. The evidence in that case disclosed that the apparatus was used in biological laboratories, institutions of learning, pathological laboratories, hospitals, and laboratories of industrial concerns where it was desirable to have examination of microscopic specimens.

In that case, the court considered the functions or capabilities of the importation and reasoned as follows:

* * * We are not impressed with the contention of the Government that the importation at bar consists of a projection lens and frames and mountings therefor. The importation embraces a projection lens and a microscope and something else in the nature of projection apparatus. It may include what might be termed, under some circumstances, frames and mountings, but it would be difficult to determine to what the frames and mountings belong—certainly not frames and mountings for a microscope, because the term "microscope" embraces the whole of that portion of the optical instrument devoted to the principle of magnification. We hardly think either of the terms 'projection lenses * * * frames and mountings therefor,' or 'projection lenses * * * microscopes * * * frames and mountings therefor,' aptly describes the merchandise at bar, but we do hold that the provision for 'all optical instruments, frames and mountings therefor,' clearly embraces the importation at bar.

As properly observed by the trial court herein, both of those cases were important in deciding the present issue because of the recognition given by this court to the feature of the imported mechanism which extended it beyond the classification as a projection apparatus. In the former case, the importance of the photographic element was stressed and in the latter the microscope was the deciding factor.

We are of the opinion, as was the trial court, that the issue here is quite analogous to that which was before this court in the *Paramount Publix* case, *supra*, and the *Clay Adams* case, *supra*.

In the instant case, it is clearly the complicated sound apparatus which broadens the status of the imported device and extends its classification beyond the provisions of paragraph 228 (b). Therefore, we agree that the merchandise herein is not within the class of articles or things contemplated by the provisions of that paragraph.

Since it is not disputed that the involved device possesses all of the elements necessary to bring it within the purview of paragraph 353 as modified, it is not necessary to discuss that phase of the case. For the reasons hereinbefore set out, the judgment of the United States Customs Court is *affirmed*.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and Jackson, Judge, retired, was recalled to participate herein.